## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSE FALLIN,** | : | **Civil No. 4:24-CV-180** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The ability to breathe during exertion is essential to workplace functioning. Therefore, when making disability decisions, Social Security Administrative Law Judges (ALJs) must often assess the ability of a claimant to catch his breath while engaging in exertion. When exertion-related breathing impairments are not fully addressed or considered by an ALJ in a disability analysis, a remand of the case for further consideration is often necessary.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

So it is here. In this case medical sources who actually examined or treated Jesse Fallin found that his ability to breathe was compromised by exertion. This treating and examining source consensus was supported by clinical evidence which often documented significant declines in Fallin's ability to breathe following exertion. Consequently, these examining and treating sources imposed postural sitting, standing and walking limitations on Fallin. Yet, in denying Fallin's disability application the ALJ has now twice discounted this medical consensus by sources who had actually seen, examined or treated Fallin that there was a direct connection between Fallin's breathing impairments and exertion. Instead, the ALJ embraced the opinions of two non-examining sources and concluded that environmental factors, instead of exertion, led to the plaintiff's shortness of breath.

On appeal, Fallin has challenged this aspect of the ALJ's evaluation of his disability claim arguing in part that the ALJ failed to adequately acknowledge, address or analyze the consistency of expert findings that Fallin's breathing was significantly impaired by exertion in a manner which limited his ability to stand and walk.

While we regard this as a close case, we believe that the medical treating and examining source consensus linking Fallin's breathing impairments to exertion was not sufficiently addressed, or acknowledged, by the ALJ and warrants further

explanation. Therefore, we will order this case remanded for further consideration by the Commissioner.

## II.  **Statement of Facts and of the Case**

### A. **Introduction**

This case came to be reconsidered by an ALJ following a December 23, 2021 Appeals Council remand which directed the ALJ to give further consideration to various medical source opinions and prior administrative medical findings. (Tr. 29). In particular the Appeals Council found fault with the ALJ's analysis of medical opinion evidence from an examining source who found that Fallin's breathing was significantly compromised when he engaged in physical exertion, stating:

> The hearing decision does not contain an adequate evaluation of the medical opinion evidence from Kerri Coudriet, OTR/L, CLT in assessing the claimant's residual functional capacity. An Administrative Law Judge will articulate the persuasiveness of all the medical opinions and prior administrative medical findings in the case record, including an explanation of how the Administrative Law Judge considered the factors of supportability and consistency (20 CFR 404.1520c and 416.920c). The decision found the opinion of Ms. Coudriet persuasive (Decision, page 10), who opined that, in part, the claimant can stand and/or walk occasionally, bend and reach occasionally, climb stairs occasionally, and use hand coordination occasionally (Exhibits B1F, page 2; B6F, page 69, and B11F, page 1). This opinion (found persuasive) is more restrictive than the residual functional capacity assessment for a range of work at the light exertional level, and the Administrative Law Judge did not explain why these portions of the opinion were not adopted (Finding 5). Therefore, further consideration should be given to Ms. Coudriet's opinion and the claimant's residual functional capacity.

3

(Tr. 200). Thus, on remand, a central question for consideration by the ALJ was this expert's conclusion that Fallin's breathing difficulties were compounded by exertion and imposed exertional limits upon the plaintiff in terms of his ability to stand, walk, bend, reach and climb stairs. These limitations, in turn, were a function of the fact that Fallin alleged that he was disabled due to an array of impairments, including Bell's palsy, asthma, diabetes mellitus, hypertension, sleep apnea, right ankle arthritis, peripheral neuropathy, obesity, and degenerative disc disease. (Tr. 32). Fallin was born on March 22, 1969 and was 50 years old at the time of the alleged onset of his disability, making him an individual closely approaching advanced age under the Commissioner's regulations. (Tr. 40). He was also both asthmatic and obese, weighing up to 310 pounds, (Tr. 139), a fact which exacerbated his breathing difficulties. He had at least a high school education and prior employment as a diesel or fleet mechanic. (Id.)

## B. **Clinical Evidence Relating to Exertion and Fallin's Breathing Impairments.**

A central issue in this appeal is the question specifically identified by the Appeals Council in its remand order; namely, did the ALJ sufficiently consider whether there was a causal connection between Fallin's breathing impairments and physical exertion. As to this pivotal question, the clinical record revealed a consistent

pattern linking Fallin's shortness of breath to physical exertion. Thus, a February 19, 2019, functional capacity evaluation of Fallin documented this connection between his breathing impairments and physical exertion stating:

> Jesse is limited in physical activity due to difficulty breathing and drop in 02 saturation levels with physical exertion. It was noted to drop to as low at 82% post physical exertion such as walking. standing, lifting greater than 25#, and climbing stairs. He is limited in low level tasks demonstrating position and transition to/from floor.

(Tr. 828, 1298).

This causal linkage between exertion and breathing impairments was thoroughly documented in Fallin's clinical records throughout 2020. For example, as early as January 3, 2020, treatment providers noted that Fallin "has wheezing with any activity. Has SOB [shortness of breath] with exertion." (Tr. 799). Two months later, on March 11, 2020, it was observed that Fallin experienced: "Shortness of breath with short exertion." (Tr. 893).  On June 11, 2020, treatment notes revealed that Fallin: "has shortness of breath with exertion as at baseline." (Tr. 878). During a September 21, 2020, clinical encounter Fallin disclosed that he experienced: "SOB [shortness of breath] with walking. Productive cough with white sutum in the morning. Wheezing with walking longer distances. Chest tightness with exertion." (Tr. 777). At an October 21, 2020, appointment Fallin again reported suffering

shortness of breath with exertion. (Tr. 769). By December 22, 2020, it was reported that Fallin: "Easily is short of breath with exertion." (Tr. 847).

These symptoms persisted in 2021 and 2022. Thus, records of a March 22, 2021 office visit with Fallin's treating physician, Dr. Victor Lahnovych, confirmed this on-going exertion-related impairment, noting that he: "Still has SOB with exertion." (Tr. 831). On March 21, 2022, it was observed that Fallin continued to suffer from: "Asthma, moderate persistent. . . . . SOB with exertion is present, he is at baseline." (Tr. 1248). During an October 26, 2022, medical appointment Fallin: "report[ed] that his breathing has been a little rough lately. He report[ed] SOB all the time, worse upon exertion with some associated wheezing and chest tightness." (Tr. 1310).

Therefore, this longitudinal treatment history clearly documented continuing, persistent breathing difficulties that were directly linked to physical exertion by Fallin.

C. **The Medical Opinion Evidence.**

Given this clinical history the examining or treating sources that opined on Fallin's impairments found that his breathing difficulties were caused by exertion or imposed exertional limits on the plaintiff.

6

On April 20, 2021, Fallin's primary treating physician, Dr. Lahnovych provided a medical statement evaluating the severity of his impairments. (Tr. 917-918). In this statement Dr. Lahnovych noted that he had been treating Fallin since 2017. He reported that Fallin suffered from persistent, moderate asthma which caused shortness of breath with exertion, and stated that this exertion-related breathing difficulty limited the plaintiff to one hour of standing or walking during an eight hour workday. (Tr. 917). According to the doctor Fallin was "extremely winded when walking." (Tr. 918). On August 25, 2022, Dr. Lahnovych submitted a second treating source statement. (Tr. 195-1296). In this statement Dr. Lahnovych once again described his lengthy treatment history with Fallin which began in 2017; reported that Fallin suffered from persistent, moderate asthma which caused shortness of breath with exertion; and stated that this exertion-related breathing difficulty limited the plaintiff to one hour of standing or walking during an eight hour workday. (Tr. 1295). According to the doctor Fallin was "easily short-winded with minimal exertion." (Tr. 1296).

Dr. Lahnovych's medical opinions, in turn, drew upon findings from a 2019 functional capacity evaluation of Fallin conducted by Kerri Coudriet, OTR/L, CLT. (Tr. 1297-1299). This evaluation also made an explicit connection between Fallin's breathing difficulties and physical exertion, finding that he was "limited in physical

activity due to difficulty breathing and drop in 02 saturation levels with physical exertion. It was noted to drop to as low at 82% post physical exertion such as walking. standing, lifting greater than 25#, and climbing stairs." (Tr. 1298). In light of this exertion-related breathing difficulty, this report limited Fallin to only occasionally standing, walking or climbing stairs. (Tr. 1297).

Finally, on July 27, 2020, Margaret Barnes, N.P., conducted a consultative examination of Fallin. (Tr. 666-677). Her report of examination also confirmed Fallin's chronic asthma and shortness of breath. (Tr. 666). While N.P. Barnes did not directly address the issue of any causal relationship between Fallin's breathing impairments and exertion, her report imposed specific exertional limits on Fallin, including four hour standing and walking limitations during an eight hour workday and confined him to two hours of continuous standing or walking during the day. (Tr. 673).

The only countervailing opinions cited by the ALJ came from non-examining state agency sources. For example, on August 13, 2020, Dr. Arcadio Hernandez issued an initial report in Fallin's case based solely upon a records review. (Tr. 111-122). In that report the doctor found that Fallin could stand and walk for six hours during the workday, was unlimited in climbing ramps and stairs, and could even occasionally scale ladders, ropes and scaffolds. (Tr. 119). Upon reconsideration, in

December of 2020 a second non-examining state agency expert, Dr. Nighia Van Tran, issued a report which echoed the initial state agency findings. (Tr. 139-153). In particular, Dr. Tran also opined that that Fallin could stand and walk for six hours during the workday, was unlimited in climbing ramps and stairs, and could occasionally scale ladders, ropes and scaffolds. (Tr. 150-51).

### D. **The ALJ Hearing and Decision**

It was against this medical backdrop, marked by a consensus among examining and treating sources that Fallin's ability to breathe was significantly impaired when he engaged in physical exertion, that Fallin's disability claim came to be heard by the ALJ on October 4, 2022. (Tr. 74-89). This hearing also took place in the context of the Appeals Council's remand order, which instructed the ALJ to more thoroughly "articulate the persuasiveness of all the medical opinions and prior administrative medical findings in the case record, including an explanation of how the Administrative Law Judge considered the factors of supportability and consistency." (Tr. 200).

In his testimony Fallin reiterated that he experienced severe breathing problems which were exacerbated by exertion and environmental factors. (Tr. 78-85). A Vocational Expert also testified at this hearing. (Tr. 85-89). However, none of the hypotheticals posed to that Vocational Expert incorporated the exertion-

9

related limitations on standing, walking or climbing stairs that had been found by the treating and examining sources. (Id.)

Following this hearing, on December 6, 2022, the ALJ issued a decision denying Fallin's application for benefits. (Tr. 26-44). In that decision, the ALJ first concluded that Fallin met the insured status requirements of the Social Security Act through December 31, 2020 and had not engaged in substantial gainful activity since February 19, 2020, his alleged onset date. (Tr. 32). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Fallin had the following severe impairments: Bell's palsy, asthma, diabetes mellitus, hypertension, sleep apnea, right ankle arthritis, peripheral neuropathy, obesity, and degenerative disc disease. (Id.)  At Step 3, the ALJ determined that Fallin's impairments did not meet or medically equal the severity of any listed impairments. (Tr. 33-34).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering Fallin's limitations from these impairments, stating that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to occasionally climb ladders and scaffolds; able to tolerate occasional exposure to unprotected heights and dangerous moving machinery; and is not to be exposed to respiratory irritants, extreme cold and extreme heat, humidity, and wetness.

(Tr. 34).

Notably, this RFC determination was virtually identical to the prior RFC found by the ALJ in the decision which was vacated by the Appeals Council. (Tr. 185). In reaching this unchanged RFC determination, the ALJ—who had previously found Kerri Coudriet's 2019 functional capacity evaluation of Fallin to be "persuasive" (Tr. 189)—now concluded that: "This opinion is not entirely persuasive." (Tr. 40).

The ALJ explained these starkly contradictory results in the following fashion:

> A Functional Capacity Evaluation in February 2019 indicated that the claimant could lift and carry thirty pounds occasionally, sit frequently, stand and walk occasionally, bend and reach occasionally, climb stairs occasionally, perform activities requiring hand coordination occasionally, and push 70 pounds and pull 80 pounds (Exs. B1F, B6F, B11F, B15F, B21F). This opinion is not entirely persuasive. Although this opinion is supported by an explanation, the undersigned finds greater lifting and environmental limitations but lesser standing and walking limitations and no bending, reaching, or hand coordination limitations. The record shows respiratory irritants, extreme cold and heat, and humidity/wetness to trigger the claimant's asthma (Ex. B20F). The standing/walking, bending, reaching, and hand coordination limitations are not consistent with the overall evidence of record. Physical examinations routinely showed the claimant to have clear lungs, no respiratory distress, only trace bilateral lower extremity edema, no neurologic deficits, stable and nontender joints, 5/5 muscle strength, 5/5 grip strength, intact hand and finger dexterity, and normal range of motion (Exs. B1F, B4F, B5F, B7F, B12F, B14F, B17F, B20F, B23F). Further, radiology reports of the lumbar spine in July 2020 revealed only mild lumbar dextroscoliosis and only mild degenerative changes (Ex. B6F). This opinion is also inconsistent with the claimant's course of treatment. The claimant treated his asthma routinely with a

11

pair of inhalers and a rescue inhaler, and his asthma was generally stable with this treatment. The record does not show any asthma exacerbations requiring emergency room visits or hospitalization. The claimant's diabetes and hypertension were generally under good control (Exs. B12F, B17F). Finally, this opinion is also inconsistent with the claimant's activities of daily living as discussed above.

(Tr. 40).

However, notably missing from this revised evaluation was any mention of the fact that a key element of the 2019 opinion was the clinical finding that Fallin's breathing was significantly impaired when he engaged in physical exertion. Moreover, the ALJ's revised evaluation of this opinion neglected to note the clinical support for this conclusion spanning years which repeatedly confirmed a link between Fallin's shortness of breath and even minor physical exertion. Further, the ALJ's efforts to reconcile these contradictory findings concerning the Coudriet report did not address the fact that Fallin's treating physician also opined that there was a direct link between the plaintiff's breathing difficulties and physical exertion. Thus, the ALJ did not address the consistency of these opinions, or the fact that the opinions were consistent with clinical evidence. Instead, the ALJ seems to have concluded that Fallin's breathing difficulties were caused exclusively by environmental irritants and did not impose any exertional limitations on the plaintiff. It is unclear from the medical record how the ALJ reached thus medical judgment

since no medical source opined that these breathing difficulties were triggered solely by environmental factors.

Having arrived at this RFC assessment, the ALJ found at Step 5 that there were jobs which existed in substantial numbers in the national economy which Fallin could perform. (Tr. 41-42). Accordingly, the ALJ concluded that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Fallin argues in part that the ALJ failed to adequately acknowledge, address or analyze the consistency of the expert and clinical findings that Fallin's breathing was significantly impaired by exertion in a manner which limited his ability to stand and walk. This case is fully briefed and is, therefore, ripe for resolution. Finding that the ALJ's latest decision does not sufficiently address the largely uncontested body of clinical evidence and treating and examining source opinions which confirm a direct link between Fallin's breathing impairments and his ability to engage in physical exertion, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

13

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

14

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F.

Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of

a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v.</u>

<u>Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review

of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential

standard of review. First, when conducting this review "we are mindful that we must

not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777

F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d

Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence.

Rather our task is to simply determine whether substantial evidence supported the

ALJ's findings. However, we must also ascertain whether the ALJ's decision meets

the burden of articulation demanded by the courts to enable informed judicial

review. Simply put, "this Court requires the ALJ to set forth the reasons for his

decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000).

As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable

meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the

17

insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

19

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at

20

*5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom. Metzgar</u>

<u>v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun</u>

<u>v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12,

2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366

(M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating

the existence of a medically determinable impairment that prevents him or her in

engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show

that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and

RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive

requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination.

Thus, in order to facilitate review of the decision under the substantial evidence

standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d

Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. **Legal Benchmarks for the ALJ's Assessment of Medical Opinions.**

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see

22

20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she

23

considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). However, when evaluating medical opinions it is clear that " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066).

### D. **This Decision Will Be Remanded.**

This case presents an unusual confluence of events. In December of 2021 the Social Security Appeals Council vacated the ALJ's June 2021 decision denying Fallin's disability application. In taking this course the Appeals Council highlighted an inherent contradiction in the ALJ's decision. That decision adopted a light work RFC without any express limits on standing, walking, or climbing stairs based upon a 2019 medical opinion issued by Kerri Coudriet which the ALJ deemed persuasive.

However, the ALJ's initial decision failed to recognize that this medical opinion, which the ALJ found to be persuasive, contained significant additional limitations on Fallin's ability to work in terms of standing, walking, and climbing stairs and expressly found that Fallin's shortness of breath was caused and compounded by physical exertion.

Having been instructed by the Appeals Council to reconsider this internally inconsistent decision, on remand the ALJ has now followed a different—but similarly erroneous—path. The ALJ's latest decision retains the prior light work RFC that was incorporated in the initial decision but reaches this result by deeming the 2019 medical opinion issued by Kerri Coudriet—which the ALJ previously found "persuasive" (Tr. 189)—to now be "not entirely persuasive." (Tr. 40).

This analysis is flawed on several scores. First, absent some more fulsome explanation it is difficult to understand how a single opinion based on a fixed universe of facts can first be deemed persuasive and then later found to be not entirely persuasive. Simply put, the ALJ's expedient of fundamentally altering the medical opinion analysis in this case in order to fit a previously determined  RFC places a particularly demanding burden of articulation upon the factfinder.

And that burden is not met here. In this regard, it is well-settled that  the current medical opinion regulations "adopt[] a more holistic approach to the

analysis, requiring the ALJ to evaluate all medical opinions based on their persuasiveness and explain how he or she considered the supportability and consistency of the medical opinion." <u>Mercado v. Kijakazi</u>, 629 F. Supp. 3d 260, 284 (M.D. Pa. 2022). Thus:

> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." <u>Id</u>. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." <u>Id</u>. at §§ 404.1520c(c)(2), 416.920c(c)(2).

<u>Berry v. Kijakazi</u>, No. 1:20-CV-1629, 2021 WL 7162435, at *7 (M.D. Pa. Dec. 20, 2021), <u>report and recommendation adopted,</u> No. 1:20-CV-01629, 2022 WL 551246 (M.D. Pa. Feb. 23, 2022).

In the instant case we agree that the ALJ's recent dismissal of the 2019 Coudriet opinion, which he previously found persuasive, does not satisfy the regulations' requirement to expressly address whether that opinion was consistent with other clinical and opinion evidence. Crucially, the Coudriet evaluation drew a direct connection between Fallin's shortness of breath and physical exertion. That

connection was well-documented in the clinical record, which was replete with notations that Fallin experienced shortness of breath with even mild exertion. Moreover, this finding was entirely congruent with the views Fallin's longtime treating physician, Dr, Lahnovych, who also concluded that Fallin suffered from severe shortness of breath with exertion. Yet, the ALJ discounted this well-grounded medical consensus without any express analysis or acknowledgement of how the consistency of these opinions and clinical findings substantially bolstered their persuasiveness.

This was error.  Further, the ALJ's decision seems to compound that error by assigning greater persuasive power to the non-examining state agency expert opinions. (Doc. 38). Those opinions reaching the fairly remarkable conclusion that Fallin—a 50 year old obese asthmatic who weighed 300 pounds—could stand and walk for six hours during the workday, was unlimited in climbing ramps and stairs, and could occasionally scale ladders, ropes and scaffolds. The clinical record is devoid of evidence which suggests that this older obese asthmatic was capable of spending up to a third of his workday climbing ropes, ladders and scaffolding.

We note that we are not alone in recognizing that this form of error is prejudicial and requires a remand. Quite the contrary, other courts have also found that the failure by an ALJ to adequately consider evidence regarding how breathing

impairments are compounded by exertion compels a remand. <u>See e.g.</u>, <u>Coffman v.</u>
<u>Bowen</u>, 829 F.2d 514, 518 (4th Cir. 1987); <u>Lewis v. Comm'r of Soc. Sec. Admin.</u>,
625 F. Supp. 3d 942, 950 (D. Ariz. 2022); <u>Pruden v. Saul</u>, No. 3:19-CV-859 JD,
2020 WL 6305604, at *1 (N.D. Ind. Oct. 28, 2020).

So it is here. Simply put, these shortcomings in articulation undermine the
essential logical bridge between the evidence and the ALJ's disability conclusion
which is necessary in this case. Therefore, more is needed by way of an explanation
to support this decision.  Since the ALJ's burden of articulation is not met in the
instant case, this matter must be remanded for further consideration by the
Commissioner. Yet, while we reach this result, we note that nothing in this
Memorandum Opinion should be deemed as expressing a judgment on what the
ultimate outcome of any reassessment of this evidence should be. Rather, the task
should remain the duty and province of the ALJ on remand.

## IV.    <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's
request for a new administrative hearing is GRANTED, the final decision of the
Commissioner denying these claims is vacated, and this case is remanded to the
Commissioner to conduct a new administrative hearing.

An appropriate order follows.

_s/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: June 24, 2025